IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOWER SUSQUEHANNA RIVERKEEPER ASSOCIATION, <br><br> Plaintiff, <br><br> and <br><br> UNITED STATES OF AMERICA and the PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> HANOVER FOODS CORPORATION, <br><br> Defendant. | Civil Action No. <br> 1:21-cv-01600-JPW <br> Judge Jennifer P. Wilson |

**COMPLAINT IN INTERVENTION**

The United States of America ("United States"), by authority of the Attorney General of the United States and on behalf of the U.S. Environmental Protection Agency ("EPA"), and the Commonwealth of Pennsylvania, Department of Environmental Protection ("PADEP"), (collectively, "Plaintiffs") file this Complaint in Intervention and allege as follows:

1

## INTRODUCTION

1. This is a civil action for violations of the Clean Water Act ("CWA") and The Pennsylvania Clean Streams Law ("PCSL") at Defendant Hanover Foods Corporation's ("Defendant") food-processing and canning facility in Hanover, York County, Pennsylvania (the "Facility"). On more than 600 occasions since November 2016, Defendant has violated the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit.

2. Plaintiffs seek permanent injunctive relief and the assessment of civil penalties against Defendant under Sections 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and Sections 601 and 605 of the PCSL, 35 P.S. §§ 691.601 and 691.605, to address its violations of the CWA and the PCSL.

## JURISDICTION, VENUE, AND AUTHORITY

3. This Court has jurisdiction over the subject matter of this action under Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and under 28 U.S.C. §§ 1331, 1345, and 1355.

4. This Court has supplemental jurisdiction over the PADEP state law claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the state claims are so related to the federal claims as to form part of the same case or controversy.

5. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), as well as Section 309(b) of the CWA, 33 U.S.C.

§ 1319(b), because it is the judicial district in which Defendant is doing business and in which the violations alleged in the Complaint occurred.

6. As signatory of the Complaint, PADEP has actual notice of commencement of this action as required by Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

7. The Attorney General of the United States is authorized to represent the United States in this case pursuant to 33 U.S.C. § 1366 and 28 U.S.C. §§ 516 and 519.

## DEFENDANT

8. Defendant owns and operates the Facility, located at 1550 York Street, Hanover, PA 17331.

9. Defendant is incorporated in Pennsylvania and has its principal place of business at 1486 York Street, Hanover, PA 17331.

10. Defendant is a "person" as defined in CWA Section 502(5), 33 U.S.C. § 1362(5).

11. At all times relevant to this Complaint, Defendant has done business in the Middle District of Pennsylvania.

## STATUTORY AND REGULATORY BACKGROUND

### Clean Water Act: NPDES Permits

12. The objective of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

13. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person," to waters of the United States, except, *inter alia*, in compliance with an NPDES permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

14. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

15. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, chemical and industrial waste.

16. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" to mean "the waters of the United States, including the territorial seas."

17. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, [or] conduit . . . from which pollutants are or may be discharged."

18. Section 402 of the CWA, 33 U.S.C. § 1342, provides that the permit-issuing authority may issue an NPDES permit that authorizes the discharge of any pollutant to waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

19. Section 402(a)(2) of the CWA, 33 U.S.C. § 1342(a)(2), directs the regulatory authority to prescribe conditions and limitations, including effluent limitations, for NPDES permits to assure compliance with the requirements of the CWA. 33 U.S.C. § 1342(a)(2); *see also* 33 U.S.C. § 1311. Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents that are discharged from point sources.

20. At all relevant times, PADEP has been authorized by EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b), to administer an NPDES permit program for regulating the discharges of pollutants to navigable waters within the jurisdiction of the Commonwealth.

<u>Clean Water Act: Enforcement</u>

21. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes civil actions for appropriate relief, including a permanent or temporary injunction, against any person who violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

22. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and the 2025 Civil Penalty Inflation Adjustment Rule, codified at 40 C.F.R. § 19.4, any person who violates any permit condition or limitation in an NPDES permit shall be subject to a civil penalty of up to $68,445 per day for each violation.

23. The U.S. Attorney General and the Department of Justice have authority to bring this action on behalf of EPA pursuant to Section 506 of the CWA, 33 U.S.C. § 1366.

<center>The Pennsylvania Clean Streams Law and Regulations</center>

24. Sections 301 and 307 of the PCSL, 35 P.S. §§ 691.301 and 691.307, prohibit the discharge by any person of any industrial wastes into waters of the Commonwealth of Pennsylvania, except, *inter alia*, in compliance with a permit issued by PADEP pursuant to Section 307 of the PCSL, 35 P.S. § 691.307, and PADEP's implementing regulations adopted by the Pennsylvania Environmental Quality Board ("EQB"). See 25 Pa. Code Chapters 91, 92a, 93, 95, and 96.

25. Section 92a.9 of the regulations adopted by the Pennsylvania EQB, 25 Pa. Code § 92.a.9, provides that an NPDES permit satisfies the permit requirement of Section 307 of the PCSL, 35 P.S. § 691.307.

26. Section 95.2(2)(i) of the regulations adopted by the Pennsylvania EQB provides that "[a]t no time [may oil-bearing wastewaters] cause a film or sheen or discoloration of the waters of this Commonwealth or adjoining shoreline." 25 Pa. Code § 95.2(2)(i).

27. Under Section 307(c) of the PCSL, "[a] discharge of industrial wastes without a permit or contrary to the terms and conditions of a permit or contrary to" PADEP's regulations constitutes a statutory nuisance. 35 P.S. § 691.307(c).

28. Under Section 3 of the PCSL, a discharge of industrial wastes or any substance into the waters of the Commonwealth, which constitutes or contributes to pollution or creates a danger of pollution, is a public nuisance. 35 P.S. § 691.3.

29. Under Section 1 of the PCSL, "pollution" means:

> contamination of any waters of the Commonwealth such as will create or is likely to create a nuisance or to render such waters harmful, detrimental or injurious to public health, safety or welfare, or to domestic, municipal, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life, including but not limited to such contamination by alteration of the physical, chemical or biological properties of such waters, or change in temperature, taste, color or odor thereof, or the discharge of any liquid, gaseous, radioactive, solid or other substances into such waters.

35 P.S. § 691.1.

30. Section 601(a) of the PCSL, 35 P.S. § 691.601(a), provides, in part, "Any activity or condition declared by this act to be a nuisance or which is otherwise in violation of this act, shall be abatable in the manner provided by law or equity for the abatement of public nuisances."

31. Section 611 of the PCSL, 35 P.S. § 691.611, provides, in part:

> It shall be unlawful to fail to comply with any rule or regulation of the department or to fail to comply with any order or permit or license of the department, to violate any of the provisions of this act or rules and regulations adopted hereunder, or any order or permit or license of the department, [or] to cause air or water pollution . . . . Any person or municipality engaging in such conduct shall be subject to the provisions of Sections 601, 602 and 605.

32. Section 605(a) of the PCSL, 35 P.S. § 691.605(a), provides, in part:

> In addition to proceeding under any other remedy available at law or in equity for a violation of a provision of this act, rule, regulation, order of the department, or a condition of any permit issued pursuant to this act, the department, after hearing, may assess a civil penalty upon a person or municipality for such violation. Such a penalty may be assessed whether or not the violation was willful. The civil penalty so assessed shall not exceed ten thousand dollars ($10,000) per day for each violation.

## GENERAL ALLEGATIONS

### Defendant's Operations and the Facility

33. The Facility is an industrial food processing facility that specializes in canning dry beans, which are produced year-round. The Facility also processes fresh pack vegetables, such as green beans, corn, and peas, as well as root crop products, on a seasonal basis.

34. Food processing at the Facility creates wastewater that consists mostly of product wash water, containing increased levels of nutrients.

35. Wastewater is collected on-site in a wastewater collection pit. Wastewater is then sent through a multi-step treatment train that begins with solids screening and grit removal, followed by anaerobic digesters (also known as bioreactors) to break down organic matter, and then clarifiers to help treat for phosphorus and precipitate solids. From the clarifiers, treated wastewater flows to Lagoon #1, which provides mixing, aeration, and settling. The majority of the

treated wastewater is then pumped to the Penn Township Wastewater Treatment Plant ("Penn Township WWTP").

36. Wastewater that is not sent to the Penn Township WWTP is pumped into Lagoon #2, where it mixes with 600,000 gallons per day of water used to cool hot cans. The combined wastewater is conveyed to two polishing ponds, then to ultraviolet light disinfection. The wastewater is then discharged from Outfall 001 to Oil Creek.

37. The treatment train described in Paragraphs 35-36 is also depicted in the below diagram. Currently, Defendant does not operate anaerobic digester 1, or the associated clarifiers 1 and 2.



38. Oil Creek is a perennial tributary. It flows into Codorus Creek, which is a tributary to the Susquehanna River, a traditionally navigable water.

39. Oil Creek is within the Chesapeake Bay watershed.

40. Oil Creek is a "navigable water" as that term is defined in CWA Section 502(7), 33 U.S.C. § 1362(7).

41. Oil Creek is a water of the Commonwealth as that term is defined in the PCSL, 35 P.S. § 691.1.

### Defendant's NPDES Permit

42. At all times relevant to this Complaint, Defendant's discharges from the Facility have been subject to the terms and conditions of NPDES Permit No. PA0044741 (the "NPDES Permit").

43. The effluent limitations in the NPDES Permit include limits on ammonia nitrogen and phosphorus discharges required in order to meet downstream water quality standards in the Chesapeake Bay.

44. Excess ammonia nitrogen and phosphorus can cause algae blooms that consume oxygen and create "dead zones" where fish and shellfish cannot survive. Additionally, these excess pollutants block sunlight that is needed for the survival of underwater grasses and aquatic life on the bottom of the Chesapeake Bay.

45. Over the past several years, PADEP has conducted multiple NPDES compliance inspections at the Facility, including on August 12, 2016 (the "2016 PADEP Inspection"), on April 18, 2019 (the "2019 PADEP Inspection"), and on July 9, 2020 (the "2020 PADEP Inspection").

46. On February 4, 2021, EPA and PADEP conducted a joint inspection of the Facility to assess Defendant's compliance with the requirements of the NPDES Permit (the "2021 Inspection").

47. On October 6, 2021, EPA sent Defendant a letter providing notice of potential violations and an opportunity to respond with respect to the violations identified at the 2021 Inspection.

48. On January 4, 2022, EPA and Defendant entered into an Administrative Order on Consent under which Defendant committed to, among other measures, conduct an engineering evaluation to analyze the cause of the violations and develop responsive recommendations.

## FIRST FEDERAL CLAIM FOR RELIEF
### Violations of NPDES Permit Effluent Limits

49. Paragraphs 1–48 are realleged and incorporated herein by reference.

50. The NPDES Permit contains effluent limitations for multiple pollutants, including total suspended solids, carbonaceous biological oxygen demand ("CBOD"), ammonia nitrogen, and temperature.

51. The NPDES Permit requires Defendant to submit discharge monitoring reports ("DMRs") on a periodic basis. DMRs are reports certified by the Defendant that provide the results of discharge monitoring required by the NPDES Permit.

52. Based on DMRs submitted to PADEP by Defendant, Defendant discharged pollutants into Oil Creek in excess of its NPDES Permit effluent limitations on more than 600 occasions since November 2016. *See* Appendix A.

53. Each violation of a permit condition is a violation of the NPDES Permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and the CWA.

54. Unless enjoined, Defendant's violations will continue.

55. Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant is liable for permanent injunctive relief.

56. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and the 2025 Civil Penalty Inflation Adjustment Rule, codified at 40 C.F.R. § 19.4, Defendant is liable for civil penalties of up to $68,445 per day for each violation.

### FIRST COMMONWEALTH CLAIM FOR RELIEF
**Violations of NPDES Permit Effluent Limits**

57. Paragraphs 1–48 are realleged and incorporated herein by reference.

58. Paragraphs 50–54 are realleged and incorporated herein by reference.

59. The conditions described in paragraph 52 constitute unlawful conduct pursuant to Section 611 of the PCSL, 35 P.S. § 691.611.

60. Pursuant to Section 605 of the PCSL, 35 P.S. § 691.605, Defendant is subject to civil penalty liability not to exceed ten thousand dollars ($10,000) per day for each violation.

## SECOND FEDERAL CLAIM FOR RELIEF
### Violations of Other NPDES Permit Discharge Limitations

61. Paragraphs 1–48 are realleged and incorporated herein by reference.

62. At all relevant times, Part A.I, Additional Requirement 1 of the NPDES Permit prohibited the discharge of "[f]loating solids, scum, sheen or substances that result in observed deposits in the receiving water."

63. At all relevant times, Part A.I, Additional Requirement 4 of the NPDES Permit prohibited the discharge of "[f]oam or substances that produce an observed change in the color, taste, odor or turbidity of the receiving water, unless those conditions are otherwise controlled through effluent limitations or other requirements in this permit."

64. At the 2020 PADEP Inspection, effluent flowing from the Outfall 001 had a greenish/yellow tint with some observable solids, in violation of Part A.I, Additional Requirements 1 and 4 of the NDPES Permit.

65. At the 2021 Inspection, EPA and PADEP observed brown solids accumulating and clumps of Sphaerotilus-type bacterial colonies on stream substrate in the vicinity of Outfall 001 in Oil Creek, in violation of Part A.I, Additional Requirements 1 and 4 of the NDPES Permit. The discharge from Outfall 001 created a visible difference in water quality in Oil Creek spanning from the Outfall to approximately 20 meters downstream.

66. Each violation of a permit condition is a violation of the NPDES Permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and the CWA.

67. Unless enjoined, Defendant's violations will continue.

68. Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant is liable for permanent injunctive relief.

69. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and the 2025 Civil Penalty Inflation Adjustment Rule, codified at 40 C.F.R. § 19.4, Defendant is liable for civil penalties of up to $68,445 per day for each violation.

### SECOND COMMONWEALTH CLAIM FOR RELIEF
### Violations of Other NPDES Permit Discharge Limitations

70. Paragraphs 1–48 are realleged and incorporated herein by reference.

71. The conditions described above in paragraphs 62–67 are realleged and incorporated herein by reference.

72. The conditions in paragraphs 64–65 constitute unlawful conduct pursuant to Section 611 of the PCSL, 35 P.S. § 691.611.

73. Pursuant to Section 605 of the PCSL, 35 P.S. § 691.605, Defendant is subject to civil penalty liability not to exceed ten thousand dollars ($10,000) per day for each violation.

### THIRD FEDERAL CLAIM FOR RELIEF
### Violations of NPDES Permit
### Operation and Maintenance Requirements

74. Paragraphs 1–48 are realleged and incorporated herein by reference.

14

75. At all relevant times, Part B.I.D of the NPDES Permit required Defendant to "properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the terms and conditions of this permit."

76. During their inspections, EPA and PADEP observed the following violations of Part B.I.D of the NPDES Permit at various locations within the Facility's wastewater treatment train, some of which persisted through multiple inspections:

77. <u>Cooling water magmeter vault</u>: During the 2021 Inspection, the vault was completely flooded with steaming water, an indicator of a cooling water leak in the pipeline.

78. <u>Anaerobic digesters</u>:

    a. During the 2019 PADEP Inspection, digester #2 was operating at 90 degrees Fahrenheit or less, although it was designed to operate around 95 degrees Fahrenheit in order to optimize the ability of the microorganisms to break down organic matter. A Hanover Foods representative stated that the heat exchanger may not be sufficient to maintain design pressure.

    b. During the 2020 PADEP Inspection, digester #2 was still operating below 95 degrees. A Hanover Foods representative again stated that the heat exchanger may not be sufficient to maintain design pressure.

      c.     During the 2021 Inspection, EPA determined that temperatures were routinely under 85 degrees at digester #2, although it was designed to operate at a temperature of 95 degrees or more. A Hanover Foods representative stated that he believed the boiler for the digester was undersized for providing sufficient heat.

79.    <u>Clarifiers</u>:

      a.     During the 2019 PADEP Inspection, clarifiers #3 and #4 were experiencing short-circuiting, gas release, and solids carry over in multiple areas along the weirs. There was also algae accumulation in the effluent weir notches. This indicates that some wastewater was exiting the clarifier without adequate treatment.

      b.     During the 2020 PADEP Inspection, clarifiers #3 and #4 were again experiencing short-circuiting, gas release, and solids carry over in multiple areas along the weirs. There was also some minor algae accumulation in the effluent weir notches.

      c.     During the 2021 Inspection, the wastewater in clarifier #3 was thick and sludge-like in places; solids were floating and bulking in other areas of the unit; and solids were flowing over clarifier weirs. These conditions indicate that treatment was likely occurring through a less efficient anaerobic digestion process.

  d. During the 2021 Inspection, there were floating and bulking solids in clarifier #4, as well as solids flowing over clarifier weirs.

 80. <u>Lagoons</u>:

  a. During the 2016 PADEP Inspection, there was water leaking from a drainpipe under the drain system for Lagoon #2.

  b. During the 2021 Inspection, water in the effluent discharge structure at Lagoon #2 appeared turbid, inhibiting full performance of the UV disinfection system downstream.

 81. <u>Polishing ponds</u>:

  a. During the 2019 PADEP Inspection, aeration in the polishing ponds was turned off, leading the Facility to experience heavy algae growth in the polishing ponds, which in turn fouled the aerator motors.

  b. During the 2020 PADEP Inspection, scum and solids were present on the surface of the polishing ponds, indicating a lack of maintenance.

  c. During the 2021 Inspection, water leaving the polishing ponds to be treated by the UV disinfection system was turbid, inhibiting full performance of the UV disinfection system downstream.

 82. <u>UV system</u>:

  a. During the 2019 PADEP Inspection, the UV disinfection system was offline.

83. During the 2021 Inspection, several warning lights on the UV system were illuminated or flashing, indicating errors or failures of the UV lamps. The electronic user interface for the unit indicated 29 alarms at the time of the inspection.

84. Each violation of a permit condition is a violation of the NPDES Permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and the CWA.

85. Unless enjoined, Defendant's violations will continue.

86. Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendant is liable for permanent injunctive relief.

87. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and the 2025 Civil Penalty Inflation Adjustment Rule, codified at 40 C.F.R. § 19.4, Defendant is liable for civil penalties of up to $68,445 per day for each violation.

### THIRD COMMONWEALTH CLAIM FOR RELIEF
### Violations of NPDES Permit
### Operation and Maintenance Requirements

88. Paragraphs 1–48 are realleged and incorporated herein by reference.

89. Paragraphs 75–85 are realleged and incorporated herein by reference.

90. The conditions described in paragraphs 76–83 constitute unlawful conduct pursuant to Section 611 of the PCSL, 35 P.S. § 691.611.

91.     Pursuant to Section 605 of the PCSL, 35 P.S. § 691.605, Defendant is subject to civil penalty liability not to exceed ten thousand dollars ($10,000) per day for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      Permanently enjoin Defendant from discharging pollutants except as expressly authorized by the CWA, the PCSL, and the limitations and conditions of its NPDES Permit;

B.      Order Defendant to take all necessary steps to comply with the CWA, the PCSL, and the limitations and conditions of its NPDES Permit;

C.      Assess civil penalties against Defendant of up to $68,445 per day for each violation of the CWA;

D.      Assess civil penalties against Defendant of up to $10,000 per day for each violation of the PCSL; and

E.      Grant such other relief as the Court may deem appropriate.

Respectfully submitted,

FOR THE UNITED STATES

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources
Division
U.S. Department of Justice


          s/ Vanessa M. Moore
          VANESSA M. MOORE
          DC Bar No. 1617837
          Trial Attorney
          Environmental Enforcement Section
          U.S. Department of Justice
          P.O. Box 7611
          Washington, D.C. 20044-7611
          Phone: (202) 514-3900
          vanessa.moore@usdoj.gov

OF COUNSEL

Natalie L. Katz
Senior Asst Regional Counsel
U.S. Environmental Protection Agency,
Region 3
Phone: (215) 814-2615
katz.natalie@epa.gov

          FOR THE PENNSYLANIA
          DEPARTMENT OF ENVIRONMENTAL
          PROTECTION

          s/ Angela Bransteitter Davis
          ANGELA BRANSTEITTER DAVIS
          Assistant Counsel
          Office of Chief Counsel
          South Central Regional Office
          Department of Environmental Protection
          909 Elmerton Avenue
          Harrisburg, PA 17110-8200
          Phone: (717) 783-7473
          Fax: (717) 772-2400
          anbranstei@pa.gov